## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

JAMES DANIELS #590302,

       *Plaintiff,*

                                    CASE NO. 3:20-cv-10469

*v.*

C/O CHRISTOFF,                           DISTRICT JUDGE ROBERT H. CLELAND
ADW GREASON,                          MAGISTRATE JUDGE PATRICIA T. MORRIS
WARDEN WARREN and
ADMINISTRATIVE ASSISTANT
GOLSON,[1]

       *Defendants.*
_____/

## REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 29)

### I.   RECOMMENDATION

     For the following reasons, **I RECOMMEND** that this Court **GRANT** Defendant Golson's motion for summary judgment on the basis of exhaustion, dismissing all claims against her **WITHOUT PREJUDICE.**  (ECF No. 29).  **I RECOMMEND** further that the Court **GRANT** Defendants Christoff, Warren, and Greason's motion to dismiss the claims against them in their official capacities, dismissing these claims **WITH PREJUDICE**. Should the District Court accept my recommendation, the remaining claims are limited to those against Defendants Christoff, Warren, and Greason in their individual capacities.

### II.   REPORT

---

[1] The Court recognizes that Golson's actual name is "Mona Golson."

## A.     Procedural and Factual Background

On February 24, 2020, Plaintiff James Daniels, a Michigan Department of Corrections ("MDOC") prisoner currently housed at the Newberry Correctional Facility ("NCF") in Newberry, Michigan, filed suit in this Court under 42 U.S.C. § 1983, alleging violations of the First, Eighth and Fourteenth Amendments and the Prison Rape Elimination Act, 34 U.S.C. §§ 30301–09 ("PREA") while incarcerated at the Macomb Correctional Facility ("MRF") in New Haven, Michigan.

Plaintiff makes the following allegations.  On November 3, 2018, he filed a "PREA grievance" against Defendant Christoff.  (ECF No. 1, PageID.6).  The grievance alleges that during a single strip search, Christoff improperly asked him to "bend over and spread his buttocks" three times.  (*Id*.).  Plaintiff complied the first two times but refused the third time and requested that Christoff "get a supervisor." (*Id*.).  After filing the PREA grievance, Plaintiff was subjected to multiple acts of "retaliation, harassment and threats . . ." (*Id*. at PageID.7).  On November 12, 2018, Plaintiff filed a grievance against Christoff for the retaliation and harassment.  (*Id*. at PageID.7, 22-23).   The grievance states that Christoff stopped Plaintiff on the way to Plaintiff's job in segregation as a porter, demanding an itinerary.  (*Id*.).  When Plaintiff could not  produce an itinerary, Christoff asked for his ID and ordered him to remove his coat.  (*Id*.).  When Plaintiff refused to remove his coat, Christoff handcuffed him and took him to segregation.  (*Id*. at PageID.8).  A non-defendant sergeant who had been called by Christoff for backup conducted a strip search, after which Plaintiff was released from segregation.  (*Id*.).

The following day, Plaintiff was called to the control center for a "major ticket review" concerning the misconduct tickets Christoff wrote the day before. (*Id*.). Plaintiff was informed by another sergeant that the tickets would be dismissed. (*Id*.). During the same interview, Plaintiff told "Captain White" (a non-defendant) that he believed the tickets were written in retaliation by Christoff for filing the PREA grievance. (*Id*. at PageID.9). Due to "the careless mishandling" of Plaintiff's PREA claim, "two other instance[s] of sexual harassment" and retaliatory behavior occurred, including an April 9, 2019 incident in which Christoff entered Plaintiff's cell and "touch[ed] and/or shook" his buttocks. (*Id*. at 9, 30). The incident resulting in Plaintiff being written a misconduct ticket for disobeying a direct order and for insolence. (*Id*. at 9). Because of the retaliatory behavior, Plaintiff experienced "mental and emotional anguish" and anxiety. (*Id*.). Following "several months of complaints and grievance[s]," Plaintiff was transferred to Kinross Correctional Facility ("KCF") located in the upper peninsula of Michigan. (*Id*. at PageID.10). He filed a grievance against Defendants Warren, MRF's Warden; Assistant Deputy Warden Greason; and administrative assistant Golson. (*Id*.). In response to the grievance, he was told that his transfer was ordered to make "bedspace for a prisoner who had a court writ." (*Id*.). Notwithstanding the reason provided by Defendants, Plaintiff alleges that "it is customary to send prisoners that seek to find redress in the form of grievance or civil litigation" to a facility in the upper peninsula. (*Id*.). He alleges that as a result of the transfer, a hand surgery was delayed and that his participation in a dog training program was interrupted. (*Id*.). He requests monetary damages.

## B.     Summary Judgment Standard

A court will grant a party's motion for summary judgment when the movant shows that "no genuine dispute as to any material fact" exists. Fed. R. Civ. P. 56(a). In reviewing the motion, the court must view all facts and inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party bears "the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986)) (internal quotation marks omitted). In making its determination, a court may consider the plausibility of the movant's evidence. *Matsushita*, 475 U.S. at 587-88. Summary judgment is also proper when the moving party shows that the non-moving party cannot meet its burden of proof. *Celotex*, 477 U.S. at 325.

The non-moving party cannot merely rest on the pleadings in response to a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993). The non-movant cannot withhold evidence until trial or rely on speculative possibilities that material issues of fact will appear later. 10B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2739 (3d ed. 1998). "[T]o withstand a properly supported motion for summary judgment, the non-moving party must identify specific facts and affirmative evidence that contradict those offered by the moving party." *Cosmas v. Am. Express Centurion Bank*, 757 F. Supp. 2d 489, 492 (D. N.J. 2010). In doing so, the non-moving party cannot simply assert that

the other side's evidence lacks credibility. *Id.* at 493. And while a pro se party's arguments are entitled to liberal construction, "this liberal standard does not ... 'relieve [the party] of his duty to meet the requirements necessary to defeat a motion for summary judgment.'" *Veloz v. New York*, 339 F. Supp. 2d 505, 513 (S.D.N.Y. 2004) (quoting *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003)). "[A] pro se party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D. N.Y. 1995) (quoting *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

When the non-moving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479-80. The court will rely on the "facts presented and designated by the moving party." *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 404 (6th Cir. 1992). After examining the evidence designated by the parties, the court then determines "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so onesided that one party must prevail as a matter of law." *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

## C. Exhaustion Under the PLRA

Under the Prison Litigation Reform Act ("PLRA") of 1996, specifically 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under § 1983 ...

by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The exhaustion requirement is mandatory and applies to all suits regarding prison conditions, regardless of the nature of the wrong or the type of relief sought. *Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731, 741 (2001). Furthermore, "exhaustion" under the PLRA means "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 92 (2006). In *Woodford*, the Supreme Court defined "proper exhaustion" as requiring "compliance with an agency's deadlines and other critical procedural rules...." *Woodford*, 548 U.S. at 90.

MDOC Policy Directive ("P.D.") 03.02.130, effective March 18, 2019, prescribes the three-step administrative exhaustion process for grievable matters.[2] At Step I, a prisoner must "attempt to resolve the issue with the staff member involved within two business days" and, if unsuccessful, must file a grievance within five business days. *Id.* at ¶ Q. If the inmate is dissatisfied with the disposition of the grievance, or does not receive a response ten days after the due date, he or she may file a Step II grievance using the appropriate form. *Id.* at ¶ DD. Similarly, if the inmate is dissatisfied with the Step II response or does not receive a response for ten days after the response was due, he or she may file a Step III grievance. *Id.* at ¶ HH.

---

[2]Some of Plaintiff's grievances predate the MDOC Policy Directive version effective March 19, 2019. However, the only grievance at issue in the current motion was filed on July 1, 2019. The Court is mindful that under the Policy Directive, allegations of sexual abuse will not be processed as grievances under MDOC's general grievance policy but instead are reported as set forth in P.D. 03.03.140, which concerns PREA claims. *See* P.D. 03.02.130 ¶ D (effective Mar. 18, 2019). While Plaintiff brings claims against Christoff under the PREA, the allegations against Golson are limited to First Amendment retaliation claims. The alternate grievance procedure for claims of sexual abuse is not applicable here.

To be properly exhausted, a defendant must be named at Step I. P.D. 03.02.130, ¶ S provides:

> The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places, and names of all those involved in the issue being grieved are to be included.

Defendants concede that the claims against Christoff, Greason, and Warren are exhausted but that the allegation against Golson that she participated in a retaliatory transfer is not exhausted.  (ECF No. 29, PageID.137-138).

In Grievance Identifier MRF-1907-0992-24A, Plaintiff sets forth his claim that his transfer was executed in retaliation for "exercising his right to seek redress." (*Id*. at PageID.163).  He states that "Warden Warren and Assistant Deputy Warden Greason retaliated against [him]" for filing grievances and otherwise asserting his rights to redress the alleged constitutional and statutory violations.  (*Id*.).

In response to the present motion, Plaintiff seems to argue that Golson's role as an interviewee after the grievance was filed put her on sufficient notice of the claims against her.  (ECF No. 35, PageID.220-221, 235).  Defendants' Exhibit 2 shows that Golson was interviewed following the filing of the Step I grievance.  (ECF No. 29, PageID.164).  The grievance response states that "administrative Asst. Golson was interviewed and stated prisoners are transferred in accordance to the transfer policy and the Warden's office did not retaliate against [Plaintiff] for any reason." (*Id*.).   While her statement indicates that she was privy to the Warden's office process of transferring prisoners, her mere participation in the investigation of the Step I grievance as an interviewee does not cure Plaintiff's failure to identify her by name or position in the actual Step I grievance.  *Mays*

7

v. *Pynnonen*, No. 2:17-CV-00167, 2021 WL 469041, at *9 (W.D. Mich. Jan. 5, 2021), *report and recommendation adopted,* No. 2:17-CV-167, 2021 WL 266620 (W.D. Mich. Jan. 27, 2021) (The plaintiff's "insertion of additional claims later in the process does not serve to exhaust those claims").

Because Plaintiff did not comply with the Policy Directive requirement that a defendant be named at Step I, he has not properly exhausted.  P.D. 03.02.130, ¶ S. Therefore, dismissal of the claims against Golson without prejudice is appropriate.  *See Bell v. Konteh*, 450 F.3d 651, 653 (6th Cir. 2006) ("[T]he appropriate disposition of an unexhausted claim under the PLRA is dismissal without prejudice.").

### D.  Official Capacity Claims

Defendants also argue that the claims against Christoff, Warren, and Greason in their official capacities be dismissed.[3]

The Eleventh Amendment to the United States Constitution provides that no citizen of the United States shall commence a suit against any state. U.S. Const. amend. XI.; *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). It is well established that a suit against a state officer in his or her official capacity is a suit against the entity he or she represents. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Defendants Christoff, Warren, and Greason are all state employees.  Therefore, by suing Defendants in their official capacities, Plaintiff is effectively suing the State of Michigan. *See Maben v. Thelen*, 887 F.3d 252, 257, 270–71 (6th Cir. 2018) (holding that the Eleventh

---

[3] Plaintiff brought claims against Defendants in both their individual and official capacities.  The current motion does not ask for the dismissal of the claims against these Defendants in their individual capacities.

Amendment barred a suit against a prison guard in his official capacity); *Baskerville v. Blot*, 224 F. Supp. 2d 723, 738 (S.D.N.Y. 2002) (holding that the Eleventh Amendment barred a lawsuit against "corrections officers [and] nurses employed by the New York State Department of Corrections" in their official capacities).

Plaintiff's official capacity claims against Defendants for monetary damages are therefore barred by Eleventh Amendment immunity. While the Eleventh Amendment does not prohibit suits against states for purely injunctive relief, *see Ex parte Young*, 209 U.S. 123, 148 (1908), the Complaint requests monetary damages only. Accordingly, claims against these Defendants in their official capacities should be dismissed. *Timmer v. Mich. Dep't of Commerce*, 104 F.3d 833, 836 (6th Cir. 1997) ("It is well established that § 1983 does not abrogate the Eleventh Amendment and that Michigan has not consented to the filing of civil rights suits against it in federal court."). Because "[a]n official-capacity defendant is absolutely immune from monetary damages," the claims for monetary relief should be dismissed with prejudice. *McClain v. Holmes*, No. 1:21-CV-814, 2022 WL 304538, at *6 (W.D. Mich. Feb. 2, 2022) (citing *Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998); *Wells v. Brown*, 891 F.2d 591, 592–93 (6th Cir. 1989).

E.    **Conclusion**

For these reasons, **I RECOMMEND** that this Court **GRANT** Defendant Golson's motion for summary judgment on the basis of exhaustion, dismissing claims against her **WITHOUT PREJUDICE**. (ECF No. 29). **I RECOMMEND** further that the Court **GRANT** Defendants Christoff, Warren, and Greason's motion to dismiss claims against

them in their official capacities, dismissing these claims **WITH PREJUDICE**.  Should the District Court accept my recommendation, the remaining claims are limited to those against Defendants Christoff, Warren, and Greason in their individual capacities.

### III.  <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy."  Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this R&R.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this R&R to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the

objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  June 21, 2022                        s/ Patricia T. Morris
                                            Patricia T. Morris
                                            United States Magistrate Judge