UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES E. DANIELS III,

    Plaintiff,

v.

Case No. 20-cv-10469
Honorable Linda V. Parker

TEDD CHRISTOFF,
PATRICK WARREN, and
ALAN GREASON,

    Defendants.
_____/

**<u>OPINION AND ORDER (1) ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION DATED JANUARY 24, 2024 AND (2) ADOPTING IN PART AND REJECTING IN PART MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION DATED FEBRUARY 1, 2024</u>**

    Plaintiff initiated this pro se civil rights lawsuit on February 24, 2020, asserting claims arising from his incarceration at the Michigan Department of Corrections ("MDOC") Macomb Correctional Facility. The matter was previously assigned to the Honorable Robert H. Cleland but was reassigned to the undersigned on June 20, 2023. It is referred to Magistrate Judge Patricia T. Morris for all pretrial proceedings, including a hearing and determination of all non-dispositive matters pursuant to 28 U.S.C. § 636(b)(1)(A) and/or a report and recommendation

1

("R&R") on all dispositive matters pursuant to 28 U.S.C. § 636(b)(1)(B). (ECF No. 61.)

The case is presently before the undersigned on two R&Rs issued by Magistrate Judge Morris. The first is an R&R, filed January 24, 2024 (ECF No. 69), addressing Plaintiff's motion for a default judgment against Defendants (ECF No. 65). The second is an R&R, filed February 1, 2024 (ECF No. 70), addressing Defendants' motion for summary judgment (ECF No. 55) and motion to strike certain declarations (ECF No. 66). Defendants have filed objections to both R&Rs. (ECF Nos. 71, 73.)

## **Standard of Review**

When objections are filed to a magistrate judge's R&R on a dispositive matter, the court "make[s] a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The court, however, "is not required to articulate all of the reasons it rejects a party's objections." *Thomas v. Halter*, 131 F. Supp. 2d 942, 944 (E.D. Mich. 2001) (citations omitted). A party's failure to file objections to certain conclusions of the report and recommendation waives any further right to appeal on those issues. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Likewise, the failure to object to certain conclusions

2

in the magistrate judge's report releases the court from its duty to independently review those issues. *See Thomas v. Arn*, 474 U.S. 140, 149 (1985).

## Default Judgment R&R

In the January 24 R&R, the magistrate judge recommends that this Court deny Plaintiff's motion for default judgment because Defendants have answered and actively defended against Plaintiff's claims. (ECF No. 69.) Defendants, unsurprisingly, do not object to that recommendation. Defendants do take issue, however, with the magistrate judge's indication in the R&R that Defendants claimed they were not ordered to answer Plaintiff's Complaint. (*See* ECF No. 69 at PageID. 1026 (citing ECF No. 67 at PageID. 976-78).)

There is merit to Defendants' objection. Defendants never asserted that they were not ordered to respond to Plaintiff's Complaint. (*See* ECF No. 67 at PageID. 976-78.) Instead, what Defendants wrote, was that the Prison Litigation Reform Act does not require a response *unless* the Court orders one. (*Id*.) As Defendants acknowledge, a correction of what they expressed does not alter the magistrate judge's analysis that Plaintiff is not entitled to a default judgment.

The Court therefore adopts the January 24 R&R.

## Summary Judgment R&R

In the February 1 R&R, the magistrate judge recommends that the Court grant summary judgment to Defendants on the claims identified by Plaintiff in his

3

Complaint, and which he has indicated throughout discovery he is raising—those being, violations of the Prison Rape Elimination Act ("PREA") and the First, Eighth, and Fourteenth Amendments to the United States Constitution. (*See, e.g.*, ECF No. 70 at PageID. 1034.) But then, despite recognizing that Plaintiff had not expressly asserted a violation of his Fourth Amendment rights, the magistrate judge concludes that the facts alleged support such a claim. (*Id*.) The magistrate judge then analyzes the merits of this claim and concludes that it survives summary judgment. (*Id*. at PageID. 1044-1054.) Thus, the magistrate judge recommends that the case proceed against Defendant Tedd Christoff, only, on Fourth Amendment grounds. (*Id*. at PageID. 1030.)

Defendants (again, not surprisingly) do not object to the magistrate judge's recommendations with respect to the claims pled in Plaintiff's Complaint. However, because Plaintiff never indicated he was raising a Fourth Amendment claim, Defendants argue that they had no notice that such a claim was at issue, and therefore had no opportunity to raise arguments for why Christoff is entitled to summary judgment with respect to that claim. Defendants also argue that the magistrate judge reached the wrong conclusion in finding merit to a Fourth Amendment claim. Defendants therefore object to the magistrate judge's recommendation to allow that claim "to proceed."

4

**Finding a Fourth Amendment Claim**

It is well established that pro se complaints are to be construed liberally. *See, e.g., Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999). The Federal Rules of Civil Procedure "call for 'a short and plain statement of the claim showing that the pleader is entitled to relief,' Fed. R. Civ. Proc. 8(a)(2); they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014). As the Sixth Circuit has indicated, however, *Johnson concerned* the sufficiency of a plaintiff's complaint at the motion to dismiss stage, not at summary judgment.[1] *See Alexander v. Carter for Byrd*, 733 F. App'x 256, 264-65 (6th Cir. 2018). The same is true of *Skinner v. Switzer*, 562 U.S. 521 (2011)—the second case cited by the magistrate judge in support of finding a Fourth Amendment claim here. (*See* ECF No. 70 at PageID. 1044.) The Sixth Circuit has refused to apply the same leniency at the summary judgment stage. *See Alexander*, 733 F. App'x at 264-65. Further, the Sixth Circuit has advised, "the lenient

---

[1] While, in fact, the decision in *Johnson* indicates that summary judgment had been entered against the plaintiffs below, their complaint was evaluated for its sufficiency under Rule 8. *See* 574 U.S. at 10-11. The issue in *Johnson* was the plaintiffs' failure to invoke § 1983 as the vehicle for bringing their Fourteenth Amendment due process claim, not their failure to identify the correct legal theory supporting their claim.

treatment generally accorded pro se litigants has limits." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996); *see also Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004) (citing *Pilgrim*).

"Liberal construction does not require a court to conjure allegations on a litigant's behalf, and a pleading must provide notice to the opposing party of the relief sought." *Erwin v. Edwards*, 22 F. App'x 579, 580 (6th Cir. 2001) (internal and end citations omitted); *see also Martin*, 391 F.3d at 714 (quoting *Erwin*). "Traditionally, the 'leniency standard' has still required basic pleadings standards. Arguably, hanging the legal hat on the correct peg is such a standard[.]" *Martin*, 391 F.3d at 714 (internal citations omitted). Defendants are entitled to "fair notice" not only of the factual background supporting the plaintiff's claim but also "of what the claim is[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (ellipsis removed). Therefore, the Sixth Circuit has held that a plaintiff "seek[ing] to expand [his] claims to assert new theories, . . . may not do so in response to summary judgment or on appeal." *Bridgeport Music, Inc. v. WM Music Corp.*, 508 F.3d 394, 400 (6th Cir. 2007) (citations omitted); *see also Tucker v. Union of Needletrades, Indus., & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005) (holding "liberal pleading standards" governing motion to dismiss inapplicable at summary judgment).

Yet, here, we do not have a situation where Plaintiff attempted to expand his claims in response to Defendants' summary judgment motion. Perhaps more concerning—as Defendants lacked the opportunity to address the claims even in a reply brief—Plaintiff's claims were expanded for the first time by the magistrate judge in the R&R.

The magistrate judge relied on caselaw "recogniz[ing] that the Eighth and Fourth Amendments provide overlapping protections against strip searches."[2] (ECF No. 70 at PageID. 1044 (citing *Fugate v. Erdos*, No. 21-4025, 2022 WL 3536295, at *4, 13 (6th Cir. 2022) (citing *Henry v. Hulett*, 969 F.3d 769, 781 (7th Cir. 2020)).) But the inquiries used to decide whether a strip search violates each of these amendments do not overlap. *See, e.g., Fugate*, 2022 WL 3536295, at *4-5, 13. Defendants received no notice of their need to defend against a Fourth Amendment claim, as Plaintiff did not plead a Fourth Amendment claim in his Complaint (*see generally* ECF No. 1) and confirmed during his deposition that he

---

[2] This rationale does not support finding a claim not pled by Plaintiff. State and federal statutes provide overlapping protections of numerous rights. Take for example Title VII of the Civil Rights Act of 1964 and Michigan's Elliott-Larsen Civil Rights Act. And, the Supreme Court and Sixth Circuit have found it improper for a court to construe a complaint alleging a claim under only one source of law as alleging a claim under both. *See, e.g., Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 943 (6th Cir. 1994) ("The well-pleaded complaint rule generally provides that the plaintiff is the master of his complaint, and the fact that the wrong asserted could be addressed under either state or federal law does not ordinarily diminish the plaintiff's right to choose a state law cause of action.").

was raising claims only under the PREA and First, Eighth, and Fourteenth Amendments (*see* ECF No. 56-7 at PageID. 585).³

It is well established under Supreme Court and Sixth Circuit precedent that, although pro se complaints must be construed liberally, "the party who brings a suit is master to decide what law he will rely upon." *Porter v. Genovese*, 676 F. App'x 429, 440 (6th Cir. 2017) (quoting *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25 (1913)); *Bunche v. United States*, No. 17-6190, 2018 WL 4959029, at *3 (6th Cir. June 20, 2018) (citing *The Fair*) (finding that the district court erred in recasting the plaintiff's negligence claim as a medical malpractice claim). Further, the Sixth Circuit has warned district courts to not "seek[] out facts" or "develop[] legal theories" for parties. *Garnett v. Akron City Sch. Dist. Bd. of Educ.*, No. 22-3864, 2023 WL 6632836, at *2 (6th Cir. Oct. 12, 2023) (quoting *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 406 (6th Cir. 1992)); *see also Parker v. Winwood*, 938 F.3d 833, 839 (6th Cir. 2019).

This Court therefore finds merit to Defendants' objection to the R&R based on the expansion of Plaintiff's claims to include a claim under the Fourth Amendment.

---

³ Thus, contrary to the magistrate judge's concern, it is unsurprising that Defendants only "vaguely" discussed the penological interest for the search and left it to the "Court to perform the heavy lifting of figuring out how, exactly, the strip search advances that interest." (ECF No. 70 at PageID. 1054.) These issues were not the focus of the Eighth Amendment inquiry.

**Merits of a Fourth Amendment Claim**

While Plaintiff may not have asserted a violation of his Fourth Amendment rights before the magistrate judge found such a claim supported by the alleged facts, he certainly could now move to amend his complaint to add this theory. *See* Fed. R. Civ. P. 15 (contemplating that amendments can be made before, during, and even after trial and providing that "[t]he court should freely give leave when justice so requires"). Defendants likely would respond to such an attempt with the argument that the amendment is futile for many of the reasons raised in their objections to the magistrate judge's R&R. Because there is merit to those objections, as well, this is an additional reason to reject the magistrate judge's recommendation with respect to this "claim."

In the R&R, the magistrate judge sets forth the proper framework for analyzing an unreasonable strip search claim in the prison setting. (*See* ECF No. 70 at PageID. 1045-47.) There is no reason to restate that framework fully here. Most relevant is the "three-step analysis" for determining whether a strip search passes muster: (1) "the nature of the intrusion;" (2) "the need for the search, giving due deference to the correctional officer's exercise of her discretionary functions;" and (3) "whether the search was reasonably related to legitimate penological interests by weighing the need against the invasion." *Sumpter v. Wayne Cnty.*, 868

F.3d 473, 482 (6th Cir. 2017) (quoting *Stoudemire v. Mich. Dep't of Corr.*, 705 F.3d 560, 572(6th Cir. 2013)).

Although recognizing that the search of Plaintiff—like all strip searches— was "humiliating and deeply offensive" (ECF No. 70 at PageID. 1048 (quoting *Stoudemire*, 705 F.3d at 572-73), the magistrate judge acknowledged that "nothing occurred during the search that rendered it unusually intrusive compared to other strip searches (*id.*).[4] The magistrate judge also acknowledged that the search was conducted to find or deter the movement of contraband, which is a legitimate penological interest. (*Id.* (citing *Florence v. Bd. of Chosen Freeholders*, 566 U.S. 318, 327-28 (2012).) Nevertheless, the magistrate judge found that the search "was an exaggerated response to the prison's interest in detecting contraband" and that the policy Christoff followed was therefore "not reasonable." (*Id.* at PageID. 1051-52.)

---

[4] The search was not conducted in view of others, Christoff did not touch Plaintiff, and Christoff did not make any lewd or demeaning comments. (*See* ECF No. 70 at PageID. 1048.) Further Christoff performed the search only because MDOC policy required it, not for some retaliatory or other improper purpose. (*See id.* at PageID. 1051.) These are circumstances that have led courts to find strip searches unconstitutional. *See, e.g.*, *Stoudemire*, 705 F.3d at 574-75 (finding strip search in view of other inmates and prison personnel unreasonable when no exigent circumstances made such a search necessary); *Sumpter*, 868 F.3d at 483 (finding strip search unconstitutional in part because officer made several rude comments in the process).

Christoff conducted the search in accordance with internal MDOC policy. (*Id.* at PageID. 1051.) This policy provides for routine strip searches of inmates in specific circumstances, including "[u]pon admission to, or release from, a segregation housing unit." (*See* ECF No. 55-4 at PageID. 437, ¶ Y(1).) The magistrate judge read the policy as applying only to inmates housed in segregation, as they enter or are released from the unit, rather than inmates, like Plaintiff, who go in and out of segregation as part of their prison employment. (*Id*. at PageID. 1051-52.) However, the magistrate judge's reading is contrary to how the policy in fact is followed within the prison. (*See* ECF No. 56-7 at PageID. 575 (Plaintiff acknowledging that he is subject to strip searches as a porter when entering and exiting the segregation unit)); *see also Turner v. Safley*, 482 U.S. 78, 84 (1987)(advising that courts should give significant deference to prison officials in interpreting and implementing regulations); *Bell v. Wolfish*, 441 U.S. 520, 547 (1979) (instructing that prison administrators "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security").

There is logic to how prison officials carry out this policy as the prison's interest in preventing the movement of contraband is only fully served by the search of all inmates allowed in and out of the segregation housing unit, regardless

11

of whether this is their assigned housing unit or they are moving through the unit for some other purpose, such as work. In any event, as Defendants point out, the search also was required under another paragraph of the policy directive, which applies to prisoners with a lower security level entering an area of the prison with a higher security level. (*See* ECF No. 55-4 at PageID. 437, ¶ Y(5).)

Yet, even if MDOC policy required the search, the magistrate judge concluded that the policy was unreasonable because there was no individualized suspicion of smuggling, it was not conducted at a point of entry into the prison, and no extenuating circumstances were offered to justify the search beyond MDOC's apparent conclusion that the circumstances present an opportunity for the movement of contraband. (ECF No. 70 at PageID. 1052.) As acknowledged in the R&R, however, courts routinely uphold internal searches in the corrections context, even without individualized suspicion, as a means to prevent the exchange of contraband from one prisoner to another and between prisoners and employees. (*See id*. at PageID. 1049.) Courts also routinely uphold searches in reliance on the assessment of prison administrators that they are necessary for institutional security.

"The task of determining whether a policy is reasonably related to legitimate security interests is 'peculiarly within the province and professional expertise of corrections officials.'" *Florence*, 566 U.S. at 328 (quoting *Bell v. Wolfish* 441 U.S.

12

520, 548 (1979)); *see also Sumpter*, 868 F.3d at 481.  The Supreme Court and Sixth Circuit have found that "prison administrators will 'have a better grasp' than a reviewing judge on how to maintain 'order and discipline' and 'institutional security' in a correctional facility."  *Fugate v. Erdos*, No. 2022 WL 3536295, at *5 (6th Cir. 2022) (quoting *Bell*, 441 U.S. 547-48); *see also Sumpter*, 868 F.3d at 481 (citing *Bell*, 441 U.S. at 548).  For that reason, the Supreme Court and Sixth Circuit have repeatedly warned that "correction officials 'should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'"  *Sumpter*, 868 F.3d at 481 (quoting *Bell*, 441 U.S. at 547); *see also Florence*, 566 U.S. 328-29 (citations omitted); *Block v. Rutherford*, 468 U.S. at 584; *United States v. Michigan*, 940 F.2d 143, 154 (6th Cir. 1991).  Here, the magistrate judge did not accord wide deference—and perhaps not even minimal deference—to MDOC's judgment regarding the need for the search at issue to stop the flow of contraband in its facilities, including into, within, and out of segregation housing units.

As noted earlier, the magistrate judge criticized Defendants for identifying the penological interest that the strip-search policy targets without evidencing "how, exactly, the strip search advances that interest."  (ECF No. 70 at PageID. 1054.)  The magistrate judge also criticized Defendants for not explaining how

contraband might enter the segregation unit to begin with and for not providing instances where Christoff's co-workers smuggled contraband into the segregation unit. (*Id.* at PageID. 1053.) But there was no reason for Defendants to do so to defend against Plaintiff's Eighth Amendment claim. Moreover, the magistrate judge imposed a burden on Defendants not suggested by the caselaw. Once Defendants identified a legitimate penological interest for the search, the burden fell to Plaintiff to prove that MDOC exaggerated its response to that concern. *See Florence*, 566 U.S. at 330 (citing *Block*, 468 U.S. at 584-85) ("[D]eference must be given to the officials in charge of a jail *unless* there is 'substantial evidence' demonstrating their response to the situation is exaggerated.") (emphasis added); *Fugate*, 2022 WL 3536295, at *5 (explaining that, in *Florence*, "the petitioner's claim failed because *he did not produce* sufficient evidence to show that the jail's strip-search policy was unnecessary or an unjustified response to jail security") (emphasis added).

Finally, by finding a Fourth Amendment claim which Plaintiff had not alleged, the magistrate judge denied Christoff the opportunity to claim qualified immunity.[5] The issue is the right to be free from a strip search when entering and

---

[5] The R&R faults Christoff for failing to raise qualified immunity and therefore finds that he waived the defense. (*See* ECF No. 70 at PageID. 1056 n.5.) But, again, Defendants cannot be faulted for failing to raise defenses to a claim that they were unaware was being pursued before the magistrate judge advanced it. They

14

exiting a prison's segregation housing unit.  There must be "a decision that 'squarely governs' this situation" and, therefore, informed Christoff that conducting strip searches under the circumstances presented was unconstitutional. *See Sumpter*, 868 F.3d at 488.  Further, the burden would fall on Plaintiff to show that clearly established law exists.  *See id*.  From this Court's review of the relevant case law, the right of inmates working in segregation housing units to be free from suspicionless strip searches was not clearly established.

## Conclusion

For the reasons set forth above, there is merit to Defendants' objections to the February 1 R&R.  Plaintiff did not plead a Fourth Amendment claim.  But even if he did, there is a legitimate penological interest for MDOC's strip-search policy, which Christoff was following when he searched Plaintiff.  That rationale is entitled to wide deference, and *Plaintiff* offers no evidence to show that this was an exaggerated response to prison objectives.  Moreover, it is not evident that clearly established law informed Christoff that his actions were unconstitutional.

There are no objections to the magistrate judge's recommendations to deny Plaintiff's motion for default judgment, grant Defendants' motion to strike, deny Plaintiff's Motion to Amend, or grant Defendants summary judgment on Plaintiff's

---

did assert qualified immunity in their Answer to the Complaint, however.  (ECF No. 31 at PageID. 211, ¶ 1.)

claims alleging violations of the PREA and First, Eighth, and Fourteenth Amendments. Therefore, the Court adopts the magistrate judge's recommendations as to those motions and claims.

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for Default Judgment (ECF No. 65) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Strike (ECF No. 66) is **GRANTED IN PART AND DENIED IN PART**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Amend (ECF No. 60) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment (ECF No. 55) is **GRANTED**.

s/ Linda V. Parker  
LINDA V. PARKER  
U.S. DISTRICT JUDGE

Dated: March 20, 2024

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, March 20, 2024, by electronic and/or U.S. First Class mail.

s/Aaron Flanigan  
Case Manager